WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Juvenal Ortiz, as Personal Representative of the Estate of Manuel Ortiz and Maria Espinoza,

Plaintiffs,

v.

Carolina Casualty Insurance Company, Berkley Net Underwriters, LLC; and Aaron Mott,

Defendants.

No. CV-22-00370-PHX-ESW

**ORDER**

In 2018, Manuel Ortiz ("Mr. Ortiz") suffered a traumatic brain injury in an industrial accident while employed at TK Brooks Contracting, Inc ("TK Brooks"). (Doc. 65 at 2, ¶ 1). Mr. Ortiz thereafter sought workers' compensation benefits. Carolina Casualty Insurance Company ("Carolina Casualty") is TK Brooks' workers' compensation insurer. (*Id.* at ¶ 2). In March 2022, Mr. Ortiz and his wife, Maria Espinoza ("Ms. Espinoza"), initiated this action against (i) Carolina Casualty; (ii) Berkley Net Underwriters, LLC ("Berkley Net"), a third-party administrator that processes insurance claims on behalf of Carolina Casualty; and (iii) Aaron Mott, the insurance adjuster who handled Mr. Ortiz's workers' compensation claim. (Doc. 1).

On March 8, 2022, Mr. Ortiz died from mesothelioma. (Doc. 65 at 3, ¶ 4). On May 17, 2022, a First Amended Complaint was filed by Ms. Espinoza and Juvenal Ortiz, as

personal representative of the Estate of Manuel Ortiz (the "Estate"). (Doc. 17). Ms. Espinoza and the Estate are collectively referred to herein as "Plaintiffs." On July 1, 2022, Plaintiffs filed an unopposed Motion (Doc. 24) requesting leave to file a seven-count Second Amended Complaint, which the Court granted. The Second Amended Complaint raises claims alleging that Defendant Carolina Casualty breached the duty of good faith and fair dealing and that Defendants Berkley Net and Aaron Mott aided and abetted that breach. The Second Amended Complaint also asserts claims by Ms. Espinoza for loss of consortium and asserts a claim for punitive damages. (Doc. 28).

In June 2022, Defendants moved to dismiss the Second Amended Complaint. (Doc. 20). In its Order issued on July 29, 2022, the Court found that Ms. Espinoza lacks standing to assert the bad faith insurance claims in Counts One through Three and dismissed Ms. Espinoza from those claims. (Doc. 29 at 4). The Court denied the Motion to Dismiss as to Counts One through Three asserted by the Estate. (*Id.* at 5). The Court also denied the Motion to Dismiss as to Ms. Espinoza's loss of consortium claims in Counts Four through Six and Plaintiffs' punitive damages claim in Count Seven. (*Id.* at 4-5).

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 59). After reviewing the parties' briefing (Docs. 59, 60, 64, 65, 70, 73, 74), the Court will grant Defendants' Motion (Doc. 59) and enter summary judgment in favor of Defendants on all claims.[1]

## I. LEGAL STANDARDS

Summary judgment is appropriate if the evidence, when reviewed in a light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material in a case and "only disputes over facts that might affect the outcome of the suit under governing law will properly

---

[1] The parties have consented to proceeding before a Magistrate Judge pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). (Doc. 16).

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)); *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

When moving for summary judgment, the burden of proof initially rests with the moving party to present the basis for his motion and to identify those portions of the record and affidavits that he believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant fails to carry his initial burden of production, the non-movant need not produce anything further. The motion for summary judgment would then fail. However, if the movant meets his initial burden of production, then the burden shifts to the non-moving party to show that a genuine issue of material fact exists and that the movant is not entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 248, 250; *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in his favor. *First Nat'l Bank of Ariz. v. Cities Serv.Co.,* 391 U.S. 253, 288-89 (1968). However, he must "come forward with specific facts showing that there is a

genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation and emphasis omitted); *see* Fed. R. Civ. P. 56(c)(1).

Finally, conclusory allegations unsupported by factual material are insufficient to defeat a motion for summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Soremekun v. Thrifty Payless, Inc.*, 502 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"). Nor can such allegations be the basis for a motion for summary judgment.

## II. DISCUSSION

### A. Counts One, Two, and Three

It is undisputed that Defendant Carolina Casualty accepted Mr. Ortiz's claim, closed Mr. Ortiz's claim on May 3, 2020, and notified the Industrial Commission of Arizona ("ICA") that a permanent partial disability existed. (Doc. 65 at 8, ¶¶ 3, 4; Doc. 74 at 1, ¶¶ 3, 4). The parties agree that the Estate's assertion of insurance bad faith arises out of Defendants' handling of a claim that Ms. Espinoza should be compensated for caregiving services provided to Mr. Ortiz following his industrial injury. (Doc. 65 at 3, ¶ 6).

Count One of the Second Amended Complaint alleges that Defendant Carolina Casualty breached its duty of good faith and fair dealing when processing the claim for payment of Ms. Espinoza's caregiving services to Mr. Ortiz. (Doc. 28 at 8). Counts Two and Three assert that Defendants Berkley Net and Aaron Mott aided and abetted that breach of duty. (*Id.* at 10-11). To reiterate, the Court dismissed Counts One through Three as to Ms. Espinoza. (Doc. 29 at 4). Defendants argue that summary judgment must be entered in their favor as to Counts One through Three because the Estate lacks recoverable damages. (Doc. 59 at 4-7).

In "all tort actions, a plaintiff must allege and prove the existence of a duty owed, a breach of that duty, and damages causally related to such breach." *Smethers v. Campion*, 108 P.3d 946, 949 (Ariz. Ct. App. 2005); *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1010 (D. Ariz. 2013) (explaining that "an element of bad faith, like any other

tort, is causation and damages"). The covenant of good faith and fair dealing is implied in every contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (2002). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* A party seeking contract damages must prove them "with reasonable certainty." *ChartOne, Inc. v. Bernini*, 83 P.3d 1103, 1113 (Ariz. Ct. App. 2004) (internal quotation marks and citation omitted). "An award of damages cannot be based on conjecture or speculation[.]" *Walter v. F.J. Simmons & Others*, 818 P.2d 214, 221 (Ariz. Ct. App. 1991) (citation omitted).

Ariz. Rev. Stat. § 14-3110 provides that "every cause of action[2] . . . shall survive the death of the person entitled thereto or liable therefor . . . provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed." Accordingly, in its July 29, 2022 Order, the Court found that the Estate's claim for pain and suffering damages are barred by Ariz. Rev. Stat. § 14-3110. (Doc. 29 at 5). It is noted that Arizona courts have interpreted the survival statute, Ariz. Rev. Stat. § 14-3110, "to limit the scope of economic damages to those 'sustained . . . from the time of accident until his death.'" *Rodriguez v. Lytle*, No. 1 CA-CV 20-0048, 2021 WL 566293, at *2 (Ariz. Ct. App. Feb. 16, 2021) (quoting *Barragan v. Superior Ct. of Pima Cnty.*, 470 P.2d 722, 724 (1970)).

It is undisputed that the Estate's claims in Counts One, Two, and Three are limited to economic damages causally related to the purported breach of the duty of good faith and fair dealing. (Doc. 65 at 4, ¶ 9). Here, the Estate asserts two categories of economic damages: (i) a 25% fee ($50,690.63) paid to the law firm of Snow, Carpio & Weekley, PLC ("SCW") in December 2022 from the $202,762.50 received for payment of Ms. Espinoza's caregiving services and (ii) a $50,000 loan that Juvenal Ortiz provided to Ms. Espinoza for payment of a mortgage that Mr. Ortiz and Ms. Espinoza obtained prior to Mr.

---

[2] Except for "a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy[.]" Ariz. Rev. Stat. § 14-3110.

Ortiz's industrial injury. As discussed below, the Court finds that the Estate has failed to demonstrate a genuine issue of material fact as to whether the Estate has incurred economic damages causally related to the alleged insurance bad faith.

**1. 25% Fee Disbursed to SCW from Ms. Espinoza's Payment for Caregiving Services Provided to Mr. Ortiz**

On May 21, 2020, Mr. Ortiz signed a Legal Fee Agreement (the "Fee Agreement") retaining SCW to process his "claim for worker's compensation and/or medical benefits by reasons of [his] industrial injury or injuries which occurred on or about 05/16/2018." (Doc. 60-1 at 40). On July 1, 2020, a Vocational Consultant & Labor Market Expert concluded that Ms. Espinoza could fill the role of Mr. Ortiz's caregiver, which Mr. Ortiz's doctors determined that Mr. Ortiz required. (Doc. 65 at 8-9, ¶¶ 5, 8; Doc. 74 at 2, ¶¶ 5, 8).

On July 27, 2020, SCW partner Brian Weekley ("Attorney Weekley") requested compensation for Ms. Espinoza's caregiving services provided to Mr. Ortiz. (Doc. 65 at 9, ¶ 9; Doc. 65-1 at 505; Doc. 74 at 2, ¶ 9). On August 24, 2020, Attorney Weekley filed in the Industrial Commission of Arizona ("ICA") a request for hearing pursuant to Ariz. Rev. Stat. § 23-1061(J) asserting that Ms. Espinoza is entitled to compensation for providing caregiving services. (Doc. 65-1 at 748).

On October 5, 2021, the ICA issued a decision finding that Mr. Ortiz "is entitled to medical benefits to include a home aide and third-party caregivers, and that [Ms. Espinoza is] entitled to compensation for her past and future home aide assistance" to Mr. Ortiz. (Doc. 65 at 10, ¶ 17; Doc. 74 at 3, ¶ 17; Doc. 65-1 at 144). Defendants filed a Request for Review, and on January 3, 2022, the ICA amended the October 5, 2021 decision to correct a typographical error and otherwise affirmed the award. (Doc. 65 at 10, ¶ 20; Doc. 74 at 3, ¶ 20; Doc. 65-1 at 746). Defendants sought further review by the Arizona Court of Appeals, which affirmed the award in a decision issued in November 2022. (Doc. 65-1 at 447-451).

In a check dated December 2, 2022 and paid to the order of Ms. Espinoza and SCW, Defendant Berkley Net paid the sum of $202,762.50 owed for Ms. Espinoza's caregiving services provided to Mr. Ortiz. (Doc. 60-1 at 50). From this sum, a 25% fee ($50,690.63)

was paid to SCW.

In moving for summary judgment on Counts One through Three, Defendants recount that the undisputed evidence shows that Ms. Espinoza's caregiving services provided to Mr. Ortiz constituted a medical benefit. It is undisputed that the Fee Agreement reflects that Mr. Ortiz agreed to pay "SCW 5% of all undisputed temporary compensation benefits, 25% of all disputed temporary compensation benefits, and 25% of all permanent compensation benefits." (Doc. 65 at 4, ¶ 12). Attorney Weekley testified at his deposition that the caregiving services provided by Ms. Espinoza did not constitute temporary or permanent compensation benefits under the Fee Agreement. (Doc. 65-1 at 493). Attorney Weekley also testified that the services Ms. Espinoza provided to Mr. Ortiz are "termed as medical benefits" and are "paid under a statute as a medical benefit[.]" (*Id.* at 492).

Plaintiffs concede that Ms. Espinoza's caregiving services constituted palliative care and that "[Ms.] Espinoza's palliative care is a medical benefit provided to [Mr.] Ortiz." (Doc. 64 at 8; Doc. 65 at 14, ¶ 62). Yet Plaintiffs counter that Ms. Espinoza's "services are not a scheduled medical benefit and are thus subject to the contingency fee agreement." (Doc. 65 at 6, ¶ 23). However, as Defendants correctly assert in their Reply (Doc. 73 at 3), it is undisputed that the Fee Agreement does not provide for payment to SCW based on a percentage of medical benefits and does not distinguish between "scheduled" and "unscheduled" medical benefits. (*Id.* at 4-5, ¶¶ 12, 14, 17). Attorney Weekley explained at his deposition that SCW does not "charge attorney fees on medical" benefits because "it creates a deductible, essentially, for the client if we're charging a quarter on medical." (Doc. 65-1 at 472).

The Court finds that Defendants correctly assert that the undisputed evidence shows that (i) the Fee Agreement entered into between Mr. Ortiz and SCW does not provide for a fee on recovered payments for medical benefits and (ii) the caregiving services provided by Ms. Espinoza were a medical benefit. There is no evidence that the Estate otherwise agreed to pay a 25% fee on any payment for Ms. Espinoza's caregiving services. The Court finds that there is no genuine issue of material fact as to whether the $50,690.63 disbursed

to SCW from the payment of Ms. Espinoza's caregiving services constitute the Estate's economic damages casually related to the alleged insurance bad faith. Taking the evidence in a light most favorable to the Estate, the Court concludes that no reasonable jury could find that the $50,690.63 fee paid to SCW constitutes recoverable economic damages for purposes of Counts One through Three. Moreover, it is noted that the 25% fee was paid after Mr. Ortiz's death. *See Barragan*, 470 P.2d at 724 ("In general, a survival statute provides for recovery of damages sustained by the deceased party from the time of accident until his death.").

**2. $50,000 Loan to Ms. Espinoza by Juvenal Ortiz Following Mr. Ortiz's Death**

It is undisputed that approximately one year prior to Mr. Ortiz's industrial injury in 2018, Mr. Ortiz and Ms. Espinoza obtained a new residential mortgage that provided a lower interest rate than their prior mortgage and required Mr. Ortiz and Ms. Espinoza to pay the balance in full by January 1, 2022. (Doc. 65 at 6, ¶¶ 26-27).

Plaintiffs' Response to the Motion for Summary Judgment asserts that "Plaintiffs were forced to borrow $50,000 from their son, Juvenal Ortiz, in order to pay the mortgage on Plaintiffs' house." (Doc. 64 at 13). However, it is undisputed that Ms. Espinoza borrowed the $50,000 eight months after Mr. Ortiz's death. (Doc. 65 at 7, ¶ 32). To reiterate, Arizona courts have interpreted the survival statute, Ariz. Rev. Stat. § 14-3110, "to limit the scope of economic damages to those 'sustained . . . from the time of accident until his death.'" *Rodriguez*, 2021 WL 566293, at *2. Further, at his deposition, Juvenal Ortiz answered affirmatively when asked if he was "always giving [Mr. Ortiz and Ms. Espinoza] some amount of cash to help them make their monthly payments on their house" and that "after [Mr. Ortiz's] accident, it was more." (Doc. 60-1 at 61).

The Court finds that there is no genuine issue of material fact as to whether Juvenal Ortiz's $50,000 loan to Ms. Espinoza eight months after Mr. Ortiz's death constitutes economic damages incurred by the Estate that are casually related to the alleged insurance bad faith. Taking the evidence in a light most favorable to the Estate, the Court concludes that no reasonable jury could find that the Estate incurred recoverable economic damages

for purposes of Counts One through Three. The Court will grant Defendants' Motion for Summary Judgment (Doc. 59) as to Counts One through Three.

**B. Counts Four, Five, and Six**

In Counts Four through Six of the Second Amended Complaint, Ms. Espinoza asserts loss of consortium claims against Defendants. (Doc. 28 at 12-13). "Consortium includes love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations . . . . The purpose of a consortium claim is to compensate for the loss of these elements[.]" *Barnes v. Outlaw*, 964 P.2d 484, 487 (Ariz. 1998) (internal quotation marks and citation omitted). "Loss of consortium is a derivative claim, which means that the success of a loss-of-consortium claim is dependent on the success of another claim." *Martin v. Staheli*, 457 P.3d 53, 58 (Ariz. Ct. App. 2019).

The Court has concluded that Defendants are entitled to summary judgment with respect to the Estate's claims in Counts One through Three. As there is no underlying cause of action, summary judgment will be entered in favor of Defendants on Ms. Espinoza's loss of consortium claims in Counts Four, Five, and Six. *See Barnes*, 831 P.2d at 487 (explaining that because loss of consortium is a derivative claim, "all elements of the underlying cause must be proven before the claim can exist"); *Sanders v. Springfield Cmty. Ass'n*, No. 1 CA-CV 21-0494, 2023 WL 3589891, at *4 (Ariz. Ct. App. May 23, 2023) ("A derivative claim for loss of consortium necessarily requires proof of each of the elements of the underlying cause of action."); *Morley v. Smith*, No. CV 04-1874-PCT-ECV, 2007 WL 201233, at *4 (D. Ariz. Jan. 24, 2007), *aff'd*, 309 F. App'x 103 (9th Cir. 2009) ("Because no underlying claims remain against Defendants, the loss of consortium claim cannot survive").

**C. Count Seven**

The seventh and final count of the Second Amended Complaint asserts a claim for punitive damages. (Doc. 28 at 13). "A lawsuit for punitive damages only may not proceed once the cause of action for actual damages has been extinguished." *Edmond v. Fairfield Sunrise Village, Inc.*, 644 P.2d 296, 298 (Ariz. Ct. App. 1982); *see also Quiroga v. Allstate*

*Ins. Co.*, 726 P.2d 224, 226 (Ariz. Ct. App. 1986) ("There is no such thing as a cause of action simply for punitive damages. Rather, the right to an award of punitive damages must be grounded upon a cause of action for actual damages."); *Higton v. Quicken Loans, Inc.*, No. 2:10-CV-01320 JWS, 2011 WL 333357, at *4 (D. Ariz. Jan. 31, 2011) (explaining that because "punitive damages do not constitute an independent legal claim . . . their availability will depend on the ensuing viability of plaintiffs' tort claims"). Accordingly, because the Court has granted summary judgment in Defendants' favor on Counts One through Six, the Court will grant summary judgment on the claim for punitive damages in Count Seven.

## III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 59). The Clerk of Court is directed to amend the docket to reflect that Doc. 59 is a Motion for Summary Judgment, not a Motion for Partial Summary Judgment.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment according to this Order and terminate this action.

Dated this 31st day of August, 2023.

Honorable Eileen S. Willett
United States Magistrate Judge